## VICTORIA SQUARE, LLC, ET AL. *v.* THE GLASTONBURY CITIZEN ET AL.

Superior Court, Judicial District of Hartford
File No. CV-04-0100718S

Memorandum filed January 17, 2006

*Trendowski Law Offices*, for the plaintiffs.

*Alter & Sherwood*, for the defendants.

MILLER, J. Plaintiff John Alan Sakon is the owner of the plaintiff Victoria Square, LLC (Victoria Square), a company formed to acquire and develop commercial property in Glastonbury. The plaintiffs' planned development of a shopping center generated considerable controversy, notoriety and publicity in and around Glastonbury.

The defendant The Glastonbury Citizen (Citizen) is a weekly newspaper published in Glastonbury. Defendant James Hallas is the owner and publisher of the Citizen, and defendant Kathleen Stack is its editor. On April 1, 2004, the newspaper published an "April Fools' Day" edition. This edition of the Citizen was clearly a parody of the newspaper's usual content. "April Fools' " is prominently displayed across the running head of the paper and the word "NOT" appears in large bold letters so that it partially obscures the name of the paper on its front page, the page on which the article in question is located.

The article is entitled, "Sakon to Build Hooters, Wal-Mart," and states that the plaintiffs planned to build a 250,000 square foot Wal-Mart store and the state's largest Hooters restaurant. The complex to be built would also, supposedly, include a helicopter launching pad. The parties agree that the alleged facts set forth in the article are false. The article appeared on the same page as articles announcing that a Glastonbury student had won a Nobel prize, the discovery of a "black hole" at a local school and other improbable "news" stories.

The plaintiffs demanded a retraction of the story and filed suit when none was published. Their operative

complaint is the second revised complaint dated February 28, 2005. This complaint states claims in six counts sounding in defamation, invasion of privacy by false light and violation of the Connecticut Unfair Trade Practices Act, General Statutes § 42-110a et seq. The defendants have moved for summary judgment on all six counts of the complaint.

It is unnecessary, to decide this matter, to address all of the arguments advanced by the defendants in support of their motion because the court finds that the article in question was not defamatory. Our Supreme Court has held: "To prevail on a common-law defamation claim . . . the statement in question must convey an objective fact, as generally, a defendant cannot be held liable for expressing a mere opinion." (Citation omitted.) *Daley* v. *Aetna Life & Casualty Co.*, 249 Conn. 766, 795, 734 A.2d 112 (1999). "This distinction between fact and opinion cannot be made in a vacuum, however, for although an opinion may appear to be in the form of a factual statement, it remains all opinion if it is clear from the *context* that the maker is not intending to assert another objective fact but only his personal comment on the facts which he has stated." (Emphasis in original; internal quotation marks omitted.) *Goodrich* v. *Waterbury Republican-American, Inc.*, 188 Conn. 107, 111, 438 A.2d 1317 (1982).

In *Hustler Magazine, Inc.* v. *Falwell*, 485 U.S. 46, 48, 108 S. Ct. 876, 99 L. Ed. 2d 41 (1988), the magazine published a "parody" that "portrays [the] respondent and his mother as drunk and immoral, and suggests that [the] respondent is a hypocrite who preaches only when he is drunk. In small print at the bottom of the page, the ad contains the disclaimer, 'ad parody—not to be taken seriously.' The magazine's table of contents also lists the ad as 'Fiction; Ad and Personality Parody.' " The Supreme Court found that the parody was

not defamatory, noting: "The sort of robust political debate encouraged by the First Amendment is bound to produce speech that is critical of . . . public figures who are 'intimately involved in the resolution of important public questions or, by reason of their fame, shape events in areas of concern to society at large.' " Id., 51. In a later decision, the court observed that the line of cases including *Hustler Magazine, Inc.* v. *Falwell*, supra, 46, "provides protection for statements that cannot 'reasonably [be] interpreted as stating actual facts' about an individual. . . . This provides assurance that public debate will not suffer for lack of 'imaginative expression' or the 'rhetorical hyperbole' which has traditionally added much to the discourse of our Nation." (Citation omitted.) *Milkovich* v. *Lorain Journal Co.*, 497 U.S. 1, 20, 110 S. Ct. 2695, 111 L. Ed. 2d 1 (1990).

Defamation is, by its nature, mutually exclusive of parody. By definition, defamation requires a false statement of fact; parody, to the degree that it is perceived as parody by its intended audience, conveys the message that it is not the original and, therefore, cannot constitute a false statement of fact. "If a parody could be actionable because, while recognizable as a joke, it conveyed an unfavorable impression, very few journalistic parodies could survive." *San Francisco Bay Guardian, Inc.* v. *Superior Court*, 17 Cal. App. 4th 655, 662, 21 Cal. Rptr. 2d 464, review denied, 1993 Cal. LEXIS 5847 (November 10, 1993). "The butt of the parody is chosen for some recognizable characteristic or viewpoint which is then exaggerated. It is not for the court to evaluate the parody as to whether it went too far. As long as it is recognizable to the average reader as a joke, it must be protected or . . . parody . . . must cease to exist." (Internal quotation marks omitted.) *Buttons* v. *National Broadcasting Co.*, 858 F. Sup. 1025, 1028 (C.D. Ca. 1994). Parodies should be protected when they appear as such to the reasonable reader.

Moreover, "the hypothetical reasonable person . . . is no dullard. He or she does not represent the lowest common denominator, but reasonable intelligence and learning. He or she can tell the difference between satire and sincerity." (Internal quotation marks omitted.) *New Times, Inc.* v. *Isaacks*, 146 S.W.3d 144, 157 (Tex. 2004).

No such reasonable reader could construe the article in question as anything other than a parody. The defendants took considerable care to make it clear that the page where this article appeared did "NOT" contain genuine news stories. The article is surrounded by other mock articles that any reasonable reader would quickly determine to be both false and humorous. Finally, the article itself described development plans that were so extreme as to be obviously preposterous. The plaintiffs were, supposedly, planning to build a 250,000 square foot Wal-Mart store on the property; this would have been substantially larger than the building the plaintiffs wanted to construct. A helicopter launching pad in a shopping center in Glastonbury is equally ridiculous to contemplate. If none of this put the readers on notice that they were reading a parody, the statement that the Hooters logo would be positioned so as to face a local church and an elementary school would almost certainly get the point across.

The average reader of this article would, as a matter of law, find it to be a parody. A false statement that is published as a parody cannot be defamatory. The defendants' motion for summary judgment is, therefore, granted.[1]

---

[1] The defendants have also moved for summary judgment on the plaintiffs' invasion of privacy and unfair trade practices claims. The plaintiffs, in their respective briefs, have asserted absolutely no opposition to summary judgment on any claims other than the defamation counts; the motion, therefore, is granted as to all six counts of the complaint.